# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| BLACKPOWDER PRODUCTS INC.; BP FIREARMS COMPANY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-04122 |

## COMPLAINT

Plaintiffs, BLACKPOWDER PRODUCTS INC. and BP FIREARMS COMPANY LLC, by and through undersigned counsel, for their complaint allege as follows:

1. Beginning in February 2025, through a series of Executive Orders, President Trump imposed new and substantial additional tariffs on goods imported from nearly every foreign country. The authority cited for these "IEEPA duties" was the International Emergency Economic Powers Act ("IEEPA").
2. Plaintiffs, BLACKPOWDER PRODUCTS INC. and BP FIREARMS COMPANY LLC, are importers of merchandise subject to the IEEPA duties. Plaintiffs are responsible for and have paid IEEPA duties on their imported goods.
3. On February 20, 2026, the U.S. Supreme Court struck down these IEEPA duties, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc. v. Trump*, Case No. 24-1287 and *Trump v. V.O.S. Selections, Inc.,* Case No. 25-250 (US Feb. 20, 2026), *affg, V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)(appeal docketed). [Later reported at 607 U.S. ___, 146 S.Ct. 628 (2026).]

4. The Supreme Court also confirmed that challenges to the IEEPA duties fall within the exclusive jurisdiction of the Court of International Trade. *Id.* at 5. As a result, this Court has jurisdiction and authority to order remedial belief and refunds of IEEPA duties.
5. Plaintiffs hereby ask the Court to require that the IEEPA duties paid by Plaintiffs be refunded to Plaintiffs, with interest as provided for by law.
6. This separate action is necessary because the right to a refund of duties is conditioned on claims being submitted by individual importers, even if the subject duty has been ruled in principle to be unlawful.
7. This separate action is necessary now because the entries on which Plaintiffs paid IEEPA duties imposed under the authority of IEEPA have been or will shortly be liquidated with final assessments of these IEEPA tariffs. Protests of these liquidated entries will be futile at this time because, as also noted below, CBP lacks discretion and authority to overturn or disregard the various Executive Orders imposing the IEEPA duties.
8. This Court has all the powers in law and equity as a U.S. District Court.
9. In a civil action brought under 28 U.S.C. § 1581(i), the Court can enter a money judgment against the United States and can order any other appropriate civil relief. Plaintiffs are thus entitled, as a matter of law, to a judgment of this Court ordering complete refunds of these unconstitutionally and unlawfully imposed duties.
10. Accordingly, for itself, each Plaintiff seeks (i) a final determination that the IEEPA duties are unlawful; and (ii) a final judgment awarding to Plaintiff a full refund of all IEEPA duties which have been collected from, or assessed against, Plaintiff.

## PARTIES

11. Plaintiffs, BLACKPOWDER PRODUCTS INC. and BP FIREARMS COMPANY LLC, are importers of products subject to IEEPA duties.

12. Defendant United States received the payments of the IEEPA duties and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

13. In collecting the IEEPA duties Defendant acted by and through the United States Customs and Border Protection ("CBP"), an agency within the Department of Homeland Security, which is led by Rodney S. Scott, the Commissioner of CBP.

## JURISDICTION

14. The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See Learning Resources, Slip Op. at 5, n. 1.* Filing of a protest pursuant to 19 U.S.C. §1514(a) would be a futile act as Customs has no authority to overrule a Presidential Executive Order or an action to be unconstitutional. *Id*; *see also Thomson Consumer Electronics v. United States,* 247 F.3d 1210 (Fed Cir. 2001) (a constitutional challenge to an action is not protestable under 19 U.S.C. §1514(a).)

## STANDING

15. Plaintiffs have standing to bring this lawsuit because they have been adversely affected by agency action within the meaning of the Administrative Procedure Act, 5 U.S.C. § 702. Plaintiffs are the importers of record for goods imported into the United States from countries whose goods are subject to IEEPA duties. Plaintiffs have paid the IEEPA duties levied on their entries and have thus suffered injuries as a result. A determination that the IEEPA duties assessed against Plaintiffs are unlawful and unconstitutional, and a judgment awarding refunds of same to Plaintiffs, would redress those injuries.

## TIMELINESS

16. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

17. On February 1, 2025, President Trump first issued Executive Orders that resulted in the collection of IEEPA tariffs from importers. Plaintiffs began paying IEEPA duties shortly thereafter and thus their causes of action accrued less than two years before the filing of the instant action.

## GENERAL PLEADINGS

### The IEEPA Tariff Orders

18. On February 1, 2025, President Trump issued three Executive Orders imposing tariffs on imports from Mexico, Canada and China.[1] Each executive order was premised on IEEPA authorizing the tariffs. Collectively, these are referred to in this Complaint as the "Trafficking Tariff Orders."

19. President Trump subsequently modified the Trafficking Tariff Orders.[2]

---

[1] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025); Exec. Order No. 14193, *Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025); Exec. Order No. 14195, *Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7, 2025). These followed Exec. Order No. 14157, Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists, 90 Fed. Reg. 8439 (Jan. 20, 2025).

[2] Exec. Order No. 14200, *Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9277 (Feb. 11, 2025); Exec. Order No. 14228, *Further Amendment to Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 11,463 (Mar. 7, 2025), Exec. Order 14231, Amendment to Duties to Address the Flow of Illicit Drugs Across our Northern Border, 90 Fed. Reg. 11785 (Mar. 11, 2025), Exec. Order No. 14232, Amendment to Duties to Address the Flow of Illicit Drugs Across our Southern Border, 90 Fed. Reg. 11787 (Mar. 11, 2025), Exec. Order No. 14325, Amendment to Duties To Address the Flow of Illicit Drugs Across Our Northern Border, 90 Fed. Reg. 37957 (Aug. 6, 2025), Exec. Order No. 14357, Modifying Duties Addressing the Synthetic Opioid Supply Chain in the People's Republic of China, 90 Fed. Reg. 50725 (Nov. 4, 2025).

20. On April 2, 2025, President Trump issued Executive Order No. 14257, 90 Fed. Reg. 15,041 ("Reciprocal Tariff Order"), *Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*.[3]

21. The Reciprocal Tariff Order imposed a 10% baseline tariff on nearly all imports into the United States, effective April 5, and additional "reciprocal" tariffs on 57 countries, effective April 9. *Id.* at Annex I. These higher country-specific tariffs range from 11% to 50%. *Id.*

22. President Trump subsequently modified the Reciprocal Tariff Order.[4]

23. In implementing the Executive-Order-based tariff regime, the Defendant directed changes to the Harmonized Tariff Schedule of the United States (HTSUS), requiring that

---

[3] Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15,041 (Apr. 7, 2025).

[4] Exec. Order No. 14259, Amendment to Reciprocal Tariffs and Updated Duties As Applied to Low-Value Imports from the People's Republic of China 90 Fed. Reg. 15,509 (Apr. 14, 2025); Exec. Order No. 14266, Modifying Reciprocal Tariff Rates To Reflect Trading-Partner Retaliation and Alignment (Apr. 9, 2025), 90 Fed. Reg. 15,625 (Apr. 15, 2025), Exe. Order No. 14298, Modifying Reciprocal Tariff Rates To Reflect Discussions With the People's Republic of China, 90 Fed. Reg. 21831 (May 21, 2025), Exec. Order No. 14316, Extending the Modification of the Reciprocal Tariff Rates, 90 Fed. Reg. 30823 (Jul. 10, 2025), Exec. Order No. 14323, Addressing Threats to the United States by the Government of Brazil, 90 Fed. Reg. 37739 (Aug. 5, 2025), Exec. Order No. 14329, Addressing Threats to the United States by the Government of the Russian Federation, 90 Fed. Reg. 38701 (Aug. 6, 2025), Exec. Order No. 14334, Further Modifying Reciprocal Tariff Rates To Reflect Ongoing Discussions With the People's Republic of China, 90 Fed. Reg. 39305 (Aug. 14, 2025), Exec. Order No. 14346, Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements, 90 Fed. Reg. 43737 (Sep. 10, 2025), Exec. Order No. 14358, Modifying Reciprocal Tariff Rates Consistent With the Economic and Trade Arrangement Between the United States and the People's Republic of China, 90 Fed. Reg. 50729 (Nov. 4, 2025), Exec. Order No. 14360, Modifying the Scope of the Reciprocal Tariffs With Respect to Certain Agricultural Products, 90 Fed. Reg. 54011 (Nov. 25, 2025), Exec. Order No. 14361, Modifying the Scope of Tariffs on the Government of Brazil, 90 Fed. Reg. 54467 (Nov. 26, 2025).

goods subject to the challenged tariffs be entered under new and specific tariff provisions in Chapter 99, HTSUS.

24. On April 14, 2025, several companies filed an action in this Court challenging the legality of these tariff orders. *See V.O.S. Selections*, No. 25-cv-00066 (Dkt. 2). As discussed below, this Court held the orders were unlawful and the Federal Circuit, sitting *en banc*, affirmed. It was this Federal Circuit decision that was affirmed by the Supreme Court on February 20, 2026. The Supreme Court held these duties to be unlawful. Consequently, the President revoked all of the above-referenced Executive Orders effective February 24, 2026.

25. President Trump, invoking IEEPA, issued additional Executive Orders, directives, instructions, amendments and adjustments imposing additional tariffs and modifying others. As the Supreme Court has already held, IEEPA does not authorize the President to impose tariffs.

26. Pursuant to these Orders, CBP assessed additional IEEPA duty upon Plaintiffs' entries. By this complaint, Plaintiffs seek relief as a result of all duties they have paid to the United States arising from the panoply of Orders, directives, instructions, amendments and adjustments imposing tariffs issued under the claimed authority of IEEPA. Collectively, the Orders challenged in *V.O.S. Selections* and the later pronouncements are the "Challenged IEEPA Tariff Orders".

**CBP's Implementation of the Challenged IEEPA Tariff Orders**

27. CBP is charged with the assessment and collection of duties. 19 U.S.C. §§ 1500, 1502.

28. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs, including the IEEPA Duties, on the imported goods based upon the tariff

classification of the goods, according to the rates established by the Harmonized Tariff Schedule of the United States ("HTSUS"). 19 U.S.C. §§ 1202, 1500, 1502.

29. Once the final amount of duty is determined by CBP, CBP "liquidates" the entry and notifies the importer of record as to whether the entry is liquidated as entered, or the importer owes more money or is entitled to a refund. 19 U.S.C. § 1500. Here, "liquidation" refers to the point of final computation or ascertainment of duties in entries for consumption or duty drawback entries.19 C.F.R.§ 159.1.

30. While liquidation normally occurs 314 days after the date of entry, CBP has discretion to extend the deadline for liquidation for up to one year pursuant to an importer's request and a showing of good cause. *See* 19 U.S.C. § 1504(b)(2); 19 C.F.R. § 159.12(a)(1)(ii). CBP also has the power to extend the deadline for liquidation for up to one year when it lacks information sufficient to determine the correct classification, appraised value, or rate and amount of duty applicable to the imported merchandise. *See* 19 U.S.C. § 1504(b)(1); 19 C.F.R. § 159.12(a)(1)(i).

31. This Court has exercised its equitable authority to suspend liquidation. *E.g., In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

32. If the liquidated entry is protestable, the importer of record has 180 days after liquidation to file a protest contesting the liquidation and any other CBP decisions encompassed therein. 19 U.S.C. § 1514(a). But not all liquidations are protestable: where CBP acts in a ministerial capacity (*i.e.*, without discretion) in imposing a duty, the entry's liquidation cannot be protested. *Id.*; *see also Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024). *see also Thompson Consumer Electronics v. United States, supra* (a constitutional challenge to an action is not protestable under 19 U.S.C. §1514(a).)

33. This Court and the Federal Circuit have cautioned that in certain circumstances an importer may lack the legal right to recover refunds of duties for entries that have liquidated, even where the underlying legality of a tariff is later found to be unlawful. *See In re Section 301 Cases*, 524 F. Supp. 3d at 1365-66 (Ct. Int'l Trade 2021); *Target Corp. v. United States*, 134 F.4th 1307, 1316 (Fed. Cir. 2025).

34. In consequence, the Customs protest remedy need not be employed, and exhaustion of administrative remedies is not required, when such remedy would be futile or inappropriate. *See e.g.*, *McCarthy v. Madigan*, 503 U.S. 140 (1992); *Conoco Inc. v. Foreign Trade Zones Board*, 18 F.3d 1581 (Fed. Cir. 1994).

35. In *AGS Co. Automotive Sol. v. US Customs and Border Protection, et. al,* No. 27-00255 Slip Op. 25-154 (CIT Dec. 15, 2025), a three-judge panel confirmed the authority of this Court to reliquidate entries subject to the IEEPA duties. In a related action, the government has represented that it will "not object to the Court reliquidating any of plaintiffs' entries subject to IEEPA duties that are found to be unlawful." *Princess Awesome, LLC v. US Customs and Border Protection, et. al,* No. 25-078, n. 4 (CIT May 23, 2025), Dkt. No. 16 at 12.

**The Supreme Court Has Held that IEEPA Does Not Authorize Assessment of Duties**

36. The Challenged IEEPA Tariff Orders reference IEEPA, 50 U.S.C. § 1701 *et seq*., the National Emergencies Act, 50 U.S.C. § 1601 *et seq*., section 604 of the Trade Act of 1974, as amended, 19 U.S.C. § 2483, and 3 U.S.C. § 301 for authority to impose tariffs

37. None of these statutes authorizes the President to impose tariffs. Of these, Defendant has relied solely on the IEEPA statute to impose and collect the IEEPA duties contrary to that

statute.

38. The text of IEEPA does not use the word "tariff" or any term of equivalent meaning.

39. IEEPA was first enacted in 1977 and has been amended several times, but it has never been amended to authorize, or used by any other President to impose, tariffs.

40. The United States Constitution provides that "[a]ll legislative powers herein granted shall be vested in a Congress of the United States." U.S. CONST. art. I, § 1.

41. The United States Constitution also provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause"), and "[t]o regulate Commerce with foreign Nations." *Id.*, cl. 3 ("Commerce Clause").

42. It has always and everywhere been understood that the authority to levy tariffs fall within the Taxing and Commerce Clauses.

43. To the extent it is ever permissible under the U.S. Constitution for Congress to delegate any part of the powers vested in it by the Constitution to the President, it must do so, at a minimum, by providing an intelligible principle to direct and cabin the President's authority. *See Fed. Commc'ns Comm'n v. Consumers' Rsch.*, 145 S. Ct. 2482, 222 L. Ed. 2d 800 (2025). In IEEPA, Congress did no such thing.

44. Reading IEEPA as authorizing tariffs would be self-defeating because it would then also require striking down IEEPA as unconstitutional under the nondelegation doctrine for lack of any intelligible principle.

45. When Congress has not clearly spoken, courts are directed to find that matters "of vast economic and political significance" are beyond the power of the President. *Biden v. Nebraska*, 600 U.S. 477, 505–06 (2023).

46. By any objective measure, the Challenged Tariff Orders are "of vast economic and political significance." Because IEEPA does not clearly authorize the President to set tariffs—indeed, the statute does not mention the words "tariff" or "duty" and is not even housed in the same title of the U.S. Code as Congress's actual trade laws (Title 19)—the Challenged Tariff Orders cannot stand and the Defendant is not authorized to implement and collect them.

47. On May 28, 2025, a three-judge panel of this Court granted summary judgment to the plaintiffs in *V.O.S. Selections,* holding that IEEPA did not authorize assessment of IEEPA Duties. This Court permanently enjoined the government from enforcing the IEEPA Duties at issue in that case.

48. Upon appeal, the Federal Circuit stayed this Court's decision to enjoin the collection of IEEPA duties.

49. Sitting *en banc*, the Federal Circuit issued its decision on August 29, 2025, affirming this Court's decision that the IEEPA Duties are unlawful. *See V.O.S. Selections*.

50. In a separate lawsuit filed by a different group of importers, the U.S. District Court for the District of Columbia held that IEEPA does not authorize tariffs of any sort. *Learning Resources, Inc. v. Trump*, 784 F. Supp. 3d 209 (D.D.C. 2025), *cert. granted before judgment*, No. 24-1287, 2025 WL260121 (U.S. Sept. 9, 2025). That decision was appealed to the Court of Appeals for the D.C. Circuit, but before the D.C. Circuit held argument, the U.S. Supreme Court granted certiorari in both *V.O.S. Selections* and *Learning Resources*.

51. On February 20, 2026, the Supreme Court issued its opinion in both cases, holding that "IEEPA does not authorize the President to impose tariffs." *Learning Resources, Inc.,* Slip Op. at 20. This complaint refers to the "*Learning Resources*" slip opinion as the lead case at the Supreme Court. In fact, the *Learning Resources* case was vacated for lack of

jurisdiction while the *V.O.S. Selections* decision was affirmed.

**Plaintiffs Paid IEEPA Duties**

52. Plaintiffs' imports have been subject to one or more of the above-cited IEEPA duties entered the United States under newly assigned HTSUS codes. Plaintiffs have paid one or more of the above-cited IEEPA duties imposed by the Challenged IEEPA Tariff Orders.

## STATEMENT OF CLAIMS

## COUNT 1

### THE CHALLENGED IEEPA TARIFF ORDERS ARE UNLAWFUL FOR THE REASONS STATED BY THE SUPREME COURT IN *LEARNING RESOURCES*

53. Plaintiffs incorporate paragraphs 1-52 above by reference.

54. The Supreme Court in *Learning Resources* held that the President exceeded his authority under IEEPA, 50 U.S.C. § 11701 *et seq.,* when he imposed tariffs on imported goods.

55. The Supreme Court held that all tariffs imposed under IEEPA are unlawful. *Learning Resources*, Slip Op. at 16. The Supreme Court affirmed the Federal Circuit decision, which in its turn had affirmed this Court's decision on the merits of the IEEPA tariffs. *Id.*

56. The Challenged Tariff Orders cite solely to IEEPA as their authority to impose duties and modify the HTSUS.

57. The government is bound by its representations to the Courts. In its motion to the Federal Circuit in *V.O.S. Selections* to stay this Court's judgment, the Government confirmed that "[i]f the tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Gov't Motion to Stay Pending Appeal at 25, *V.O.S. Selections, Inc.,* 149

F.4th 1312 (Fed. Cir. 2025), Dkt. No. 6. *See also AGS Co. Automotive Sol.,* Slip Op. 15-154 (the government took the "unequivocal position" that liquidation status will not affect the availability of refunds after a final decision in *V.O.S. Selections*).

58. This Court is bound by the *Learning Resources* decision and, in consequence, the Court should order refunds of all IEEPA duties paid by Plaintiffs, with interest as provided by law.

59. In the face of the IEEPA duties being void *ab initio,* refunds are the only lawful remedy. In *McKesson Corp v. Florida Alcoholic & Tobacco Div.*, 496 U.S. 18 (1990), the Supreme Court held that the "exaction of a tax constitutes a deprivation of property" and "the Due Process Clause ... obligates the [government] to provide meaningful backward-looking relief to rectify any unconstitutional deprivation" (*Id.* at 31). This is accomplished "by refunding the tax previously paid" (*Id.* at 39).

**COUNT 2**

**THE CHALLENGED IEEPA TARIFF ORDERS ARE UNCONSTITUTIONAL**

60. Plaintiffs incorporate paragraphs 1-59 above by reference.

61. The U.S. Constitution provides that "Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises…" U.S. CONST. art. I, § 8, cl. 3 ("Taxing Clause").

62. The Supreme Court in *Learning Resources* held that the Challenged IEEPA Tariff Orders violated the taxing authority reserved by the Taxing Clause to Congress.

**PRAYER FOR RELIEF**

Plaintiffs respectfully requests that this Court:

a. order the United States to reliquidate any and all entries that have been liquidated with IEEPA duties;

b. order the United States to liquidate without IEEPA duties any and all entries that are unliquidated that were subject to IEEPA duties at entry;

c. order the United States to refund to Plaintiffs any and all IEEPA duties collected from Plaintiffs on any and all entries subject to IEEPA duties, with interest as provided by law;

d. award Plaintiffs their reasonable costs, including attorneys' fees, incurred in bringing this action;

e. grant such other and further relief as the Court may deem just and proper.

* * * * * * *

Respectfully submitted,

Mark K. Neville, Jr.
International Trade Counsellors
*Counsel to Plaintiffs*
2153 Clementine Street
Naples, FL 34120
Tel. 239 384 9790
Cell 347 226 0238
mkneville@itctradelaw.com

Dated: September 24, 2026

**CERTIFICATE OF SERVICE**

**CIT CASE NO. 26-04122**

Pursuant to U.S. Court of International Trade Rules 4(b) and (h), I hereby certify that on September 24, 2026, a copy of Plaintiffs' Summons and Complaint were served on the following party, Defendant the United States, by U.S. Certified Mail, Return Receipt Requested:

Attorney-In-Charge
Commercial Litigation Branch
International Trade Field Office
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Mark K. Neville, Jr.
International Trade Counsellors
2153 Clementine Street
Naples, FL 34120
Tel. 239 384 9790
Cell 347 226 0238
mkneville@itctradelaw.com